Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI260004857
Transaction ID: 0025128641
Filing Date: 06/09/2026 11:53:40 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| CASSANDRA L. HUYE,<br><br>Plaintiff,<br><br>vs.<br><br>PROJECT HARMONY (HAVEN FOR ABUSE RESPONSE MEMBERS SERVING OUR NEBRASKA YOUTH),<br><br>Defendant. | Case No. ______________<br><br><br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, by and through her attorneys, and for her causes of action against the Defendant hereby states the following:

**PARTIES-VENUE-JURISDICTION**

1. Plaintiff CASSANDRA L. HUYE, is a resident of Omaha, Douglas County, Nebraska.

2. Defendant PROJECT HARMONY (HAVEN FOR ABUSE RESPONSE MEMBERS SERVING OUR NEBRASKA YOUTH) is a Nebraska non-profit corporation authorized to conduct business in Nebraska with its principal office located in Omaha, Douglas County, Nebraska.

3. Venue is appropriate in this District under Neb. Rev. Stat. §25-403.02. Plaintiff and Defendant reside in Douglas County and the acts about which Plaintiff complains occurred during the course of her employment in Douglas County, Nebraska.

4. On or about May 23, 2025, Huye filed her charge, NEB 2-24/25-5-55306-RS, with the Nebraska Equal Opportunity Commission ("NEOC"), alleging disability discrimination and retaliation. On that same day, Huye's charge was dually filed with the U.S. Equal

EXHIBIT
A

Opportunity Commission ("EEOC") and assigned charge number 32E-2025-00453.

5. On or about March 11, 2026, less than 90 days prior to the filing of this Complaint, the Nebraska Equal Opportunity Commission issued its determination letter with respect to Plaintiff's charges, NEB 2-24/25-5-55306-RS.

6. On or about April 24, 2026, less than 90 days prior to the filing of this Complaint, the U.S. Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue on charge number 32E-2025-00453.

**FACTUAL BACKGROUND**

7. Plaintiff Cassandra L. Huye (hereinafter referred to as "Huye") commenced employment with Defendant Project Harmony (hereinafter referred to as "Project Harmony") on or about May 8, 2023. Huye was most recently employed by Project Harmony as a Mental Health Coordinator.

8. During the time Huye was employed with Project Harmony, she suffered from the health conditions of ADHD and OCD, which substantially limited her daily life activities of sleeping, working, reading, concentrating, learning and major bodily functions of her neurological and endocrine systems.

9. Huye's supervisors and Defendant's Human Resources department were aware of Huye's impairments, because they had conversations with Huye regarding her requests for reasonable accommodations throughout her employment.

10. From the time of Huye's hiring by Project Harmony, she worked a weekly schedule that was 4 days a week, 10 hours a day, with two of the four days working remotely from home.

11. On December 11, 2023, Huye was notified that Project Harmony was changing their policy and requiring all hours to be worked in the office, unless there was an ADA accommodation requested and approved.

12. On December 14, 2023, Huye had her psychiatric APRN fill out Defendant's ADA accommodation paperwork, and she

submitted it to Chris Seda-Burley (hereinafter referred to as "Seda-Burley"), Human Resources Generalist for Defendant.

13. By December 28, 2023, Huye still had not heard from Defendant's HR if her requested accommodation had been approved. Huye emailed Seda-Burley and Director/Interim Supervisor Kodjovi Dogbevi (hereinafter referred to as "Dogbevi") to request that her accommodation be approved in the interim.

14. Within hours of her email, Huye was sent an "interactive meeting" request that required her attendance outside of her normal business hours. Seda-Burley asked Huye to give her until January 12, 2024, to respond to the accommodations request, and Dogbevi approved Huye's accommodation until a decision was made.

15. On January 24, 2024, Huye was asked to attend a second "interactive meeting" with Seda-Burley and Dogbevi. During the meeting, Huye was pressured to withdraw her ADA accommodation request because there was an existing policy, 5.6 Work Week and Hours of Work Policy (herein referred to as "Policy 5.6"), that allowed employees to work from home. Huye did not want to withdraw her accommodation request because the flexible leave policy was vague, it could be changed at any time and already applied to her team but was regularly denied in actual practice. During the meeting, Huye was required to go into detail about her symptoms and disability to defend the need for the accommodation her medical provider requested.

16. On February 1, 2024, Seda-Burley verbally approved Huye's accommodation request to retain her original weekly schedule, but gave Huye a response letter that she was supposed to sign and return to HR. The letter indicated that Huye had been approved for the following accommodations: use of reserved quiet spaces, wellness room and empty offices, frequent breaks throughout the day and utilizing Policy 5.6. Huye expressed concerns about not getting a specific approval of her accommodated schedule and instead being told that she could just use a flexible leave policy that was available to all employees, subject to change and subject to managerial approval.

17. Under Policy 5.6, Huye would not have a set schedule and

would instead have to request work from home every week. From February 9, 2024 to March 21, 2024, Huye followed the policy and emailed her schedule consisting of 4 days of 10 hours shifts and two of those days working from home.

18. On or about February 22, 2024, Huye noticed that within weeks of her signing the accommodation letter, Defendant made changes to Policy 5.6.

19. On or about February 28, 2024, Huye was assigned a new supervisor, Erika Rodriguez (hereinafter referred to as "Rodriguez"). Huye was asked to attend a transfer meeting with Seda-Burley, Dogbevi and Rodriguez. During this meeting, Rodriguez was informed of Huye's approved accommodations and Huye described her current schedule process with Dogbevi—a weekly email of her schedule for the next week including which days she would work to meet client needs, the hours she would work, and which days would be in person vs remote. Rodriguez indicated that she understood the process.

20. On or about April 1, 2024, Dogbevi scheduled a meeting with Rodriguez and Huye about her ADA accommodations. During the meeting, Dogbevi told Huye that she was not allowed to schedule work from home in advance anymore based on a conversation he had with HR. Instead, Huye needed to attempt to come in every day and let her supervisor know if she needed to leave due to her disability. Huye reminded Dogbevi about her medical provider's requested accommodation and that she expressed concern back in February that the response letter was vague and they could question and change her accommodation the way it was written. Huye explained why her disability required a 4-day work week with two days working remotely and asked if Dogbevi was denying her accommodation. Dogbevi said no, and that he was going to seek clarification from Seda-Burley. Rodriguez clarified that Huye would be permitted to continue working the schedule she had been utilizing for months until a meeting with HR was able to happen.

21. On April 23, 2024, Rodriguez scheduled a meeting with Seda-Burley and Huye. During the meeting, Seda-Burley told Huye

that she could no longer schedule remote workdays anymore and instead, would have to utilize those days based on symptoms assessed that morning. Huye explained that the symptoms of her disability were ongoing and anticipated the need to utilize her accommodation. Seda-Burley told Huye that Defendant was permitted to approve the accommodation as they see fit and only let her work from home "as needed."

22. The next day, Rodriguez met with Huye to let her know that she preferred to know about her need to work from home in advance and asked that Huye still email her the days she planned to work from home in addition to sending an email the morning of.

23. Starting on April 26, 2024, and continuing through the end of her employment, Huye sent Rodriguez an email with her schedule for the week, including the days she planned to work from home. Huye also sent an email to Rodriquez that she was working from home.

24. On June 11, 2024, Huye sent an email in the morning letting Rodriguez know she would be working from home. Rodriquez responded unusually by asking for a list of what Huye was doing. Huye provided the list but questioned if she was being targeted in the request. Rodriguez informed Huye that her request for a list was a directive from Dogbevi.

25. On June 27, 2024, Huye and other members of her team were informed that they need to send a list of their tasks for the day to their manager when working from home. Huye and other members of her team voiced opposition to the practice because the only people working from home with any regularity are those with ADA accommodations and complained that it felt like the new practice was targeting disabled employees. Management expressed there were no performance concerns that were motivating the change.

26. On or around January 2025, Rodriguez began harassing Huye by monitoring her tasks completed when Huye would work from home. When Huye was working remotely, Rodriguez began messaging her several times per day asking what she was working on and how

she was feeling. Rodriguez's behavior towards Huye when she was working remotely was unprecedented and only directed towards disabled employees working from home. Rodriguez continued this behavior until the end of Huye's employment.

27. On January 27, 2025, Huye complained to Rodriguez that she did not want her medical information on the monthly ADA reports to be shared outside of her and Seda-Burley. Specifically, Huye told Rodriguez that she felt her privacy was being violated when her medical information was shared with Dogbevi and Scott Butler. Rodriguez told Huye she would only share her information with Seda-Burley that month.

28. On February 6, 2025, Rodriguez asked to meet with Huye and informed her that Seda-Burley instructed her to include Dogbevi and Bulter on the January ADA access report. Rodriguez claimed that Huye's medical information needed to be shared with Dogbevi and Butler for operations purposes according to Seda-Burley. Huye told Rodriguez that she would address the issued directly with Seda-Burley.

29. On February 13, 2025, Huye met with Dogbevi and Rodriguez and complained to Dogbevi that she was uncomfortable with the medical information on the monthly form tracking ADA access being shared with him and Butler. Dogbevi got defensive, and argued with Huye. Huye told Dogbevi that she felt like her privacy was not respected and that she did not understanding why changes to her ADA access were still being made a year into being approved for accommodations. Dogbevi told Huye that he took this meeting as a professional courtesy to her, and Huye should see it as fundamentally empathetic of him because he could have declined. Dogbevi told Huye that he was not a barrier to Seda-Burley, and Huye could email her.

30. On March 20, 2025, Huye informed Rodriguez that she had solidified her practicum placement and decided to remain at 40 hours per week. Rodriguez asked Huye to send her an email that she could forward to Dogbevi.

31. On March 28, 2025, Huye was pulled into an unscheduled

meeting with Chief Operating Officer Caren Dean, Seda-Burley, Dogbevi and Rodriguez. During this meeting Huye was told that she would no longer be able to work 4 days of 10-hour shifts. Huye reminded them that her medical provider had filled out her accommodation paperwork requesting a compressed schedule, and Dean responded that they do not have to approve the accommodation unless it was reasonable. Dean further informed Huye that she noticed a trend of two days per week working from home, and that Huye must use the in-office accommodations they are providing her. Huye explained that working a compressed schedule and working from home two days a week was her approved accommodation and that she was told that fit under the accommodations letter she was given in February 2024. Dean told Huye that her position was not remote or hybrid, that she could not schedule working from home and that they had consulted with an ADA attorney about Huye's file. Dean ended the meeting abruptly but agreed to schedule another meeting with Huye to answer the questions she still had.

32. Immediately after this meeting, Huye emailed Rodriguez and complained that the meeting was hostile and that she didn't understand why the accommodation she had for over a year was now being denied without explanation.

33. Beginning on March 28, 2025, Huye was required to work a weekly schedule of 5 days per week, 8 hours per day.

34. Huye attempted to attend the follow up meeting promised by Dean, but it was rescheduled three times by Seda-Burley on April 2nd, April 3rd and April 4th.

35. On April 3, 2025, Huye emailed Rodriguez that she would be working from home, and Rodriguez harassed Huye about using in office accommodations instead. Huye told Rodriguez she tried the in-office accommodations, and they did not work for her. Huye also shared that her symptoms had gotten worse and more frequent due to being back in the office.

36. On April 4, 2025, Huye informed Rodriguez that she intended to work her 4 days of 10 hour shifts the following week.

37. On April 7, 2025, Huye was called in to meet with Dean, Seda-Burley and Rodriguez about her practicum and accommodations. Huye was told that she was approved to work an alternative schedule including 4-10s for her MSW practicum. In the same meeting, Huye was told she could not work 4-10s as a disability accommodation. Huye asked for a letter stating the reason for the denial of her reasonable accommodation and she was told this was not a denial. Dean told Huye that she would get an updated letter that was essentially the same letter as before, and that Huye was never approved for 4-10s. Afterwards, Huye met with Rodriguez and complained that she was being denied her accommodation without explanation of undue hardship. She also complained that it was discriminatory to be approved for school but not for disability.

38. On April 8, 2026, Huye emailed Rodriguez to let her know she was working from home. Rodriguez asked her a series of questions about utilizing office accommodation. Huye informed Rodriguez that she was crying after receiving Dean's email about removing her accommodation. That same day Huye took Rodriquez into the two available spaces that she was supposed to use for accommodation and showed her why it wasn't a reasonable accommodation for her.

39. On April 10, 2025, Huye emailed Rodriguez a complaint that she was not being permitted to use her previously approved accommodations, that she had not been provided a reason for the denial, that it was against her medical provider's advice and it was causing her an increased and new symptoms of her disability.

40. On April 15, 2025, Huye emailed Rodriguez that she needed to work from home. Rodriguez responded by asking questions about Huye's symptoms and fitness to work.

41. Later that same day, Seda-Burley emailed Huye an Addendum to her accommodation letter from February 2024. The Addendum informed Huye that her position was not hybrid, remote, compressed or subject to alternative schedules. Huye refused to sign it.

42. On April 16, 2025, Huye told Seda-Burley and Rodriguez that she had spoken with the NEOC and would be filing a charge

against Project Harmony over their behavior towards Huye, including the harassment and refusal to accommodate her disability. Huye also sent an email to Seda-Burley and Rodriguez asking questions about the Addendum that was sent, asking for a reason for the denial of her accommodation and informing them that she felt she had no choice but to seek further guidance from the NEOC.

43. That same day, Huye attempted to use the wellness room as an accommodation for her disability symptoms, but it was occupied.

44. Within days of notifying Seda-Burley and Rodriguez of her plans to file a charge, on April 22, 2025, Huye was required to attend a non-mandatory conference that she had previously been excused from by Rodriguez and despite having indicated that she did not wish to attend the conference.

45. On April 24, 2025, Huye complained to Rodriguez that making her attend the conference was retaliation for her contacting the NEOC.

46. On April 29th and May 1st, Huye followed up about approval of her practicum and received no response from Dogbevi.

47. Due to the harassment and less favorable terms and conditions to which Huye was subjected, she felt forced to resign on May 9, 2025.

48. Prior to her resignation, Huye's job performance was above satisfactory.

49. Plaintiff earned approximately $865.00 weekly working fulltime for Defendant. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are in excess of $36,000 and subject to further discovery.

50. As a result of Defendant's wrongful conduct, Plaintiff suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

**COUNT I**
**DISABILITY DISCRIMINATION**
**Neb. Rev. Stat. §48-1104 ("NEFEPA")**

51. Plaintiff hereby incorporates paragraphs 1 through 50 as if fully set forth herein and states:

52. Defendant is and was at all times material an "employer" within the meaning of under Neb. Rev. Stat. §48-1102.

53. Plaintiff is and was disabled within the meaning of the NEFEPA.

54. Plaintiff had a record of disability.

55. Defendant regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

56. At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities or major bodily functions.

57. Plaintiff was qualified to perform the essential functions of the job, with or without accommodation.

58. Defendant discriminated against Plaintiff because of her disability and altered a term, condition, and/or privilege of her employment, including but not limited to harassing Plaintiff about her disability, discouraging her from using her accommodation, subjecting her to different terms and conditions of employment as compared to non-disabled employees who worked at home, and constructive discharge.

59. Defendant failed to accommodate Plaintiff's disability in violation of the NEFEPA.

60. Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the NEFEPA.

61. Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

62. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages,

including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

**COUNT II**
**DISABILITY DISCRIMINATION**
**42 U.S.C. §§12101 et seq. ("ADA")**

63. Plaintiff hereby incorporates paragraphs 1 through 62 as if fully set forth herein and states:

64. Defendant is and was at all times material an "employer" within the meaning of under 42 U.S.C. §12111.

65. Plaintiff is and was disabled within the meaning of the ADA, as amended.

66. Defendant regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

67. Plaintiff had a record of disability.

68. At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities and major bodily functions.

69. At all times relevant, Plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation.

70. Defendant discriminated against Plaintiff because of her disability and altered a term, condition, and/or privilege of her employment, including but not limited to harassing Plaintiff about her disability, discouraging her from using her accommodation, subjecting her to different terms and conditions of employment as compared to non-disabled employees who worked at home, and constructive discharge.

71. Defendant failed to accommodate Plaintiff's disability in violation of the ADA.

72. Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the ADA.

73. Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

74. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant are subject to punitive damages.

75. As a result of Defendant' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

**COUNTS III AND IV**
**RETALIATION**
**42 U.S.C. §12203 and Neb. Rev. Stat. §48-1114**

76. Plaintiff hereby incorporates paragraphs 1 through 75 as if fully set forth herein and states:

77. During her employment, Plaintiff engaged in protected activity, including but not limited to exercising her rights under the ADA and NEFEPA, by requesting disability accommodation, internally complaining about disability discrimination and retaliation, and filing a charge with the NEOC.

78. Defendant took adverse employment action against Plaintiff, including but not limited to subjecting her to retaliatory harassment, discouraging her from using her accommodation, subjecting her to different terms and conditions of employment as compared to non-disabled employees who worked at home and constructive discharge.

79. There is a causal connection between Plaintiff's participation in protected activity and Defendant' adverse action against her.

80. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as

protected by Federal law, and by its conduct Defendant are subject to punitive damages.

81. As a result of Defendant' retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

**DAMAGES**

82. Plaintiff hereby incorporates by reference paragraphs 1 through 81 and states:

83. As a result of Defendant's discrimination and retaliation, Plaintiff has suffered damages and seeks the following relief:

a. Lost wages and benefits to the time of trial;
b. Front pay;
c. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;
d. Punitive damages under Federal law;
e. Attorney's fees, expert witness fees and other reasonable costs; and,
f. Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for all her general, special, and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated: June 9, 2026.

CASSANDRA L. HUYE,
Plaintiff

BY: /s/ Jennifer Turco Meyer

Jennifer Turco Meyer, #23760
Turco Meyer Law, LLC
4309 South 174th Avenue
Omaha, Nebraska 68135
(402) 577-0252-Office
jennifer@turcomeyer.law
Attorney for Plaintiff

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI260004857
Transaction ID: 0025705039
Filing Date: 10/08/2026 03:20:44 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| CASSANDRA L. HUYE,<br><br>Plaintiff,<br><br>vs.<br><br>PROJECT HARMONY (HAVEN FOR ABUSE RESPONSE MEMBERS SERVING OUR NEBRASKA YOUTH),<br><br>Defendant. | Case No. CI26-4857<br><br>**PRAECIPE** |

TO THE CLERK OF SAID COURT:

PLEASE ISSUE Summons with a copy of the Complaint in the above-entitled matter and deliver the same to attorney for the Plaintiff for service upon the Defendant via certified mail, return receipt requested, to the following address:

PROJECT HARMONY (HAVEN FOR ABUSE RESPONSE MEMBERS SERVING OUR NEBRASKA YOUTH)
by and through their Registered Agent
Gene Klein
11949 Q Street
Omaha, NE 68137

DATED October 8, 2026.

CASSANDRA L. HUYE, Plaintiff

BY: s/ Jennifer Turco Meyer__________

Jennifer Turco Meyer, #23760
Turco Meyer Law, LLC
4309 South 174th Avenue
Omaha, Nebraska 68135
(402) 577-0252-Office
Jennifer@Turcomeyer.Law
Attorney for Plaintiff

# Certificate of Service

I hereby certify that on Friday, October 09, 2026 I provided a true and correct copy of the Praecipe-Summons to the following:

Signature: /s/ Jennifer Turco Meyer (Bar Number: 23760)

Image ID: D01075822D01

# NOTICE OF INTENT TO DISMISS

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA

Cassandra Huye v. Project Harmony

Case ID: CI 26 4857

## NOTICE AND INSTRUCTIONS

Pursuant Fourth District Court Local Rule 4-10, this notice is sent to inform each party that, within thirty (30) days from the date of this notice, one of the parties **must submit a completed Proposed Scheduling Order (PSO) form to the District Court Administrator** for review and approval. The Court Administrator will send the approved PSO to the Court assigned the case for final review and entry of the order. The Court will not consider motions or stipulations to extend or excuse the filing of the Order.

Complete the PSO form by choosing one (1) of the following and signing and dating the form:

**Part A. Contact the office of the Judge assigned to your case to get a date for a scheduling conference. One signature required.**
**Part B. Indicate the Trial or Final Hearing date, or the Trial held date if a decision is pending. One signature required.**
**Part C. Parties agree to pretrial deadlines and provide pretrial information or request a pretrial conference.**

IF A PSO IS NOT SUBMITTED BY ONE OF THE PARTIES, THE ABOVE-CAPTIONED CASE WILL BE DISMISSED FOR LACK OF PROSECUTION.

## FIND THE FORM

The form, "Proposed Scheduling Order", is online at www.dc4dc.com. Paper copies are also available in the District Court Administrators Office, 1701 Farnam Street, Suite 500.

## FOR ALL CASES INVOLVING CHILDREN:

To avoid dismissal, submit a PSO to the District Court Administrator AND, both parties **must report to Douglas County Conciliation Court** at 1701 Farnam Street Suite 155 or contact the office by phone at 402-444-7169 to comply with Fourth District Court Local Rule 4-3D.

## CHILD SUPPORT CASES

Please be advised, if your case is dismissed, all previous orders for child support will remain in full force and effect. Any temporary orders entered as part of the current action will be dismissed, if the proposed scheduling order is not submitted in the allotted time frame.

## IF A CASE IS DISMISSED

Fourth District Court Local Rule 4-10(C) states that the Court assigned the case may, in its discretion, reinstate the case. To reinstate the case, submit the following forms to the office of the Judge assigned to the case: (1) a motion to reinstate the case stating good cause why it should be reinstated; (2) a completed PSO; (3) an order to reinstate for the Judge to sign. If the Judge finds that the case shall be reinstated, an order to reinstate and a scheduling order are filed. Forms are available in the Law Library Room H08 Hall of Justice 1701 Farnam Street and online at www.dc4dc.com.

If you have any question or concerns about this notice, please contact District Court Administrator, Sheri Larsen, either by email (dcadmin@dc4dc.com) or by telephone (402-444-7004).

Date: October 8, 2026

Sheri Larsen
District Court Administrator

COURT COPY

**FILED BY**
Clerk of the Douglas District Court
10/08/2026

Please Email PSO to dcadmin@dc4dc.com

# CERTIFICATE OF SERVICE

I the undersigned, certify that on October 8, 2026 I served a copy of the foregoing upon the following persons at the addresses given.

Project Harmony
NO VALID ADDRESS

Jennifer L Meyer
jennifer@turcomeyer.law

Signature: Crystal Rhoades

FOURTH DISTRICT COURT
DOUGLAS COUNTY, NEBRASKA

Image ID:
D01076015D01

**SUMMONS**

Doc. No. 1076015

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
1701 Farnam-Clerk of District Court
1717 Harney-Separate Juvenile Court
Omaha NE 68183

Cassandra Huye v. Project Harmony

Case ID: CI 26 4857

TO: Project Harmony

**FILED BY**
Clerk of the Douglas District Court
**10/09/2026**

You have been sued by the following plaintiff(s):

Cassandra Huye

Plaintiff's Attorney: Jennifer L Meyer
Address: 4309 S 174 Avenue
Omaha, NE 68135

Telephone: (402) 577-0252

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties and filed with the office of the clerk of the court within 30 days of service of the complaint/petition. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Nebraska Supreme Court Rule 2-208 requires individuals involved in a case who are not attorneys and representing themselves to provide their email address to the court in order to receive notice by email from the court about the case. Complete and return the attached form to the court if representing yourself. This document is not the same as a response to the lawsuit which must be filed as a separate document.

Date: OCTOBER 9, 2026 BY THE COURT: Crystal Rhoades
Clerk

FOURTH DISTRICT COURT ★ DOUGLAS COUNTY, NEBRASKA ★

COURT COPY

Image ID:
D01076015D01

**SUMMONS**

Doc. No. 1076015

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

Project Harmony
Gene Klein - Reg'd Agent
11949 Q Street
Omaha, NE 68137

Method of service: Certified Mail

You are directed to make such service within ten days after the date of issue, and file with the court clerk proof of service within ten days after the signed receipt is received or is available electronically, whichever occurs first.

COURT COPY

## SERVICE RETURN

Doc. No. 1076015

Douglas District Court
1701 Farnam-Clerk of District Court
1717 Harney-Separate Juvenile Court
Omaha NE 68183

To:
Case ID: CI 26 4857 Cassandra Huye v. Project Harmony

Received this Summons on ______________________,_______. I hereby certify that on

______________________, ______ at _______ o'clock __M. I served copies of the Summons upon the party:

____________________________________________________________

by __________________________________________________________

____________________________________________________________

____________________________________________________________

as required by Nebraska state law.

Service and return $ __________

Copy __________

Mileage ____miles __________

TOTAL $ __________

Date: ____________________________ BY: ____________________________________
(Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: ______________________________________________________

At the following address: ____________________________________________

____________________________________________________________

____________________________________________________________

on the ________ day of ____________________ ________, as required by Nebraska state law.

____________________________________________

Postage $ ___________ Attorney for: ____________________________________________

The return receipt for mailing to the party was signed on ________________, _______.

To: Project Harmony
Gene Klein - Reg'd Agent
11949 Q Street
Omaha, NE 68137

From: Jennifer L Meyer
4309 S 174 Avenue
Omaha, NE 68135

COURT COPY

ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI260004857
Transaction ID: 0025850824
Filing Date: 11/09/2026 04:49:38 PM CST

# SERVICE RETURN

Doc. No. 1076015

Douglas District Court
1701 Farnam-Clerk of District Court
1717 Harney-Separate Juvenile Court
Omaha NE 68183

To:
Case ID: CI 26 4857 Cassandra Huye v. Project Harmony

Received this Summons on ______________________,________. I hereby certify that on ______________________, _______ at ________ o'clock __M. I served copies of the Summons upon the party:

______________________________________________

by ______________________________________________

______________________________________________

______________________________________________

as required by Nebraska state law.

Service and return $ __________

Copy __________

Mileage ____miles __________

TOTAL $ __________

Date: ______________________ BY: ______________________
(Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: Project Harmony (Haven For Abuse Response Members Serving Our Nebraska Youth)

At the following address: Gene Klein, Registered Agent, 11949 Q Street, Omaha, NE 68137

______________________________________________

______________________________________________

on the 13th day of October, 2026 ________, as required by Nebraska state law.

s/ Jennifer Turco Meyer

Postage $ 11.56 Attorney for: Cassandra L. Huye, Plaintiff

The return receipt for mailing to the party was signed on October 19, 2026, ________.

To: Project Harmony
Gene Klein - Reg'd Agent
11949 Q Street
Omaha, NE 68137

From: Jennifer L Meyer
4309 S 174 Avenue
Omaha, NE 68135

ATTACH RETURN RECEIPT & RETURN TO COURT

**SENDER:** ***COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gene Klein, Registered Agent
Project Harmony (Haven for Abuse
Response Members Serving Our
Nebraska Youth), 11949 Q Street
Omaha NE 68137

9590 9402 0180 6110 6386 17

2. Article Number *(Transfer from service label)*

9589 0710 5270 2266 1294 54

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature

X [signature]

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...red Mail
...d Mail Restricted Delivery
...00)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

# Certificate of Service

I hereby certify that on Tuesday, November 10, 2026 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Signature: /s/ Jennifer Turco Meyer (Bar Number: 23760)