IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CASSANDRA L. HUYE,<br><br>Plaintiff,<br><br>vs.<br><br>PROJECT HARMONY (HAVEN FOR ABUSE RESPONSE MEMBERS SERVING OUR NEBRASKA YOUTH),<br><br>Defendant. | ) | Case No. 8:26-cv-724<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Project Harmony (Haven for Abuse Response Members Serving our Nebraska Youth) (hereafter "Project Harmony" or "Defendant") submits this brief in support of its Motion to Dismiss all of Plaintiff Cassandra L. Huye's ("Plaintiff") claims asserted in the Complaint and Jury Demand (Filing No. 1-1) (the "Complaint") for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Cassandra Huye, a former Mental Health Coordinator at Project Harmony, alleges that her employer discriminated and retaliated against her because of her disability and forced her to resign. Her own allegations tell a different story: an employer that engaged in a months-long interactive process and granted multiple accommodations in writing. Then, Huye voluntarily resigned. The conditions she challenges are not objectively hostile and are ordinary workplace expectations. She was asked to schedule remote days as needed based on her symptoms rather than on a fixed schedule, to send her supervisor a list of her tasks when working remotely (just like the other members of her team), and to attend a conference. These are typical employment requests, none of which state a claim of discrimination or retaliation. Project Harmony moves to dismiss all four

counts under Rule 12(b)(6).

## I. BACKGROUND

Project Harmony is a Nebraska non-profit corporation with its principal office in Omaha, Douglas County, Nebraska. (Complaint, ¶2). Cassandra L. Huye began her employment with Project Harmony on or about May 8, 2023, most recently serving as a Mental Health Coordinator. (*Id.* at ¶7). Huye alleges that she has "ADHD and OCD." (*Id.* at ¶8). Her supervisors and Project Harmony's Human Resources department were aware of her conditions through her accommodation requests. (*Id.* at ¶9).

### A. Project Harmony Adopted a Company-Wide In-Office Policy

At hiring, Huye worked a schedule of four ten-hour days per week, two of them remote. (*Id.* at ¶10). On December 11, 2023, Project Harmony notified employees that it was changing its policy to require all hours to be worked in the office unless an ADA accommodation was requested and approved. (*Id.* at ¶11). Huye had her medical provider complete the company's ADA accommodation paperwork and submitted it to Chris Seda-Burley, Human Resources generalist for Project Harmony. (*Id.* at ¶12). Pending a decision on that request, Huye's supervisor Kodjovi Dogbevi approved Huye's requested accommodations—to work four ten-hour days, with two days remote—on an interim basis. (*Id.* at ¶¶ 13-14).

### B. Project Harmony Engaged in the Interactive Process with Huye and Approved Accommodations

Project Harmony met with Huye about her request for accommodations on multiple occasions in January and February 2024. (*Id.* at ¶¶14–16). On February 1, 2024, Seda-Burley of Human Resources approved accommodations for Huye, including the use of reserved quiet spaces, use of the wellness room and empty offices, frequent breaks throughout the day, and use of the company's flexible work-from-home policy, Policy 5.6. (*Id.* at ¶16). Project Harmony detailed

these accommodations to Huye in a letter dated February 1, 2024, which she was supposed to sign and return to Human Resources. (*Id.* at ¶16). Project Harmony clarified that Huye would not have a set work-from-home schedule, but could instead request to work from home when needed. (*Id.* at ¶17). From February 9, 2024, to March 21, 2024, Huye emailed her weekly schedule to her supervisor, consisting of four ten-hour workdays per week, with two of those days working from home. (*Id.* at ¶17).

When Huye was assigned a new supervisor, Erika Rodriguez, in late February 2024, Project Harmony held a transfer meeting to inform Rodriguez of Huye's approved accommodations. (*Id.* at ¶19). During that meeting, Huye described her current schedule process—that she would send a weekly email with her schedule, including the days and hours she worked and the days she would work remotely. (*Id.*).

On or about April 1, 2024, Dogbevi and Rodriguez met with Huye again to discuss her accommodations. Huye was reminded that she should not pre-schedule work from home days. Instead, she should try to come into the office and let her supervisor know if she needed to work from home, as needed and based on any symptoms she was experiencing. (*Id.* at ¶20). To accommodate Huye's disabilities, Project Harmony made quiet spaces, the wellness room, empty offices, and frequent breaks available to her while in the office. Project Harmony also permitted her to work from home, as needed based on symptoms. (*Id.* at ¶¶16, 21). Nevertheless, Huye wanted a guaranteed compressed four-day, ten-hour schedule with two fixed remote days instead. (*Id.* at ¶¶20, 31). At the end of the meeting, Rodriguez clarified that Huye could continue working her existing schedule, on an interim basis, until they could meet with Seda-Burley in Human Resources. (*Id.* at ¶20).

On April 23, 2024, Rodriguez and Seda-Burley met with Huye regarding her request for

accommodations. Huye was *again* told that her accommodations did not permit her to pre-schedule remote workdays, but she could work from home "as needed" based on symptoms. (*Id*. at ¶ 21). The next day, Rodriguez told Huye she preferred to know about Huye's need to work from home in advance and asked Huye to send her an email with the days she planned to work from home and send another email the morning of. (*Id.* at ¶22). Huye did so. Beginning on April 26, 2024, and through the end of her employment, Huye sent Rodriguez an email with her weekly schedule, including work from home days, and sent another email on days she was working from home. (*Id.* at ¶ 23). There are no allegations in the Complaint that Project Harmony ever denied any request from Huye to work remotely throughout her employment.

**C. Huye's Grievances Concern Ordinary, Team-Wide Supervision and Scheduling**

On June 27, 2024, Huye and other members of her team were told to send a list of their daily tasks to their manager when working from home. (*Id*. at ¶¶24–25). Management stated there were no performance concerns motivating the request. (*Id*. at ¶25). Huye further alleges that, beginning around January 2025, her supervisor monitored her work and messaged her frequently while she worked remotely. (*Id.* at ¶26).

**D. Project Harmony Continued the Interactive Process with Huye Through her Voluntary Resignation**

About a year later, on March 28, 2025, Huye attended a meeting with Chief Operating Officer Caren Dean, Seda-Burley, Dogbevi, and Rodriguez. Dean explained that Huye's position was not remote or hybrid and reiterated she could not schedule work-from-home days in advance. (*Id.* at ¶31). Huye's job required her to work a normal five-day, eight-hour schedule. (*Id.* at ¶¶31, 33). When working in the office, Huye could use the in-office accommodations Project Harmony provided. (*Id.*). Huye explained she was told that her current practice, working a compressed schedule and working from home two days per week, fit under the accommodations letter from

February 2024. Dean clarified that was not the case and agreed to schedule another meeting to answer additional questions. (*Id.*). Huye described the March 28, 2025 meeting as "hostile." (*Id.* at ¶32). The follow-up meeting was rescheduled three times, on April 2, 3, and 4. (*Id.* at ¶33).

On April 3, 2025, Huye emailed Rodriguez that she would be working from home. Rodriguez reminded Huye she should try to use the in-office accommodations. Huye responded that she had tried the in-office accommodations, that they did not work for her, and that her symptoms had gotten worse and more frequent since returning to the office. (*Id.* at ¶35). On April 4, 2025, Huye informed Rodriguez she still intended to work four days per week, with 10 hour shifts—contrary to her approved accommodations and clear direction from Dean. (*Id.* at ¶36).

On April 7, 2025, Huye had a follow-up meeting with Dean, Seda-Burley, and Rodriguez regarding her accommodations for work and her practicum. Huye was approved for an alternative schedule for her MSW practicum, four ten-hour days, but she should continue a normal, eight-hour, five-day schedule for work. (*Id.* at ¶37). Huye complained that she was being denied her requested accommodation. (*Id.*).

On April 8, Huye worked from home and notified Rodriguez via email. (*Id.* at ¶38). On April 10, Huye complained to Rodriguez that she could not use her preferred accommodation and she was experiencing an increase of symptoms. (*Id.* at ¶39). On April 15, Huye emailed Rodriguez she would be working from home. (*Id.* at ¶40). That same day, Seda-Burley sent Huye an Addendum to her February 2024 accommodation letter, which Huye refused to sign. (*Id.* at ¶41).

### E. Huye Announced her Intent to File a NEOC Charge and Then Voluntarily Resigned

On April 16, 2025, Huye told Human Resources she had spoken with the NEOC and would be filing a charge. (*Id.* at ¶42). On April 22, 2025, Huye was required to attend a non-mandatory work conference, despite indicating she did not want to go. (*Id.* at ¶44). Huye complained to

Rodriguez that requiring her to attend the work conference was in retaliation for contacting the NEOC. (*Id.* at ¶ 45).

Huye then resigned from her employment on May 9, 2025. (*Id.* at ¶47). She alleges that she "felt forced to resign" because of what she considered to be harassment and was subjected to different terms and conditions of her employment. (*Id.*).

## II. ARGUMENT

### A. Legal Standard

To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must assume the truth of well-pleaded factual allegations at this stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Legal conclusions couched as factual allegations" are not presumed to be true and may be disregarded. *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (quoting *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013)).

### B. Counts I and II Fail to Plead Disability Discrimination under the ADA or NFEPA[1]

"The ADA prohibits employers from discriminating 'against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

1 The NFEPA claims follow the same analysis as Huye's claims under the ADA and are analyzed together. *Marshall v. Eyecare Specialties, P.C. of Lincoln,* 293 Neb. 91, 102, 876 N.W.2d 372, 381 (2016).

employment.'" *Ehlers v. Univ. of Minn.*, 34 F.4th 655, 659 (8th Cir. 2022) (quoting 42 U.S.C. § 12112(a)). Huye alleges that Project Harmony discriminated against her because of her disability, under both intentional discrimination and failure-to-accommodate theories. As alleged, her claims fail under both. Project Harmony did not take *any* adverse action against Huye as a matter of law, engaged in the interactive process, and granted her multiple accommodations. Counts I and II should be dismissed.

**1. Huye Pleads No Adverse Employment Action**

To state a prima facie case under the ADA, an employee must show that she (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action due to her disability. *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007). Here, Huye has failed to plead she suffered any adverse employment actions due to her disability. To plead an adverse employment action, a plaintiff "is only required to plead 'some harm respecting an identifiable term or condition of employment.'" *Cole v. Grp. Health Plan, Inc.,* 105 F.4th 1110, 1114 (8th Cir. 2024) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024)). The adverse action "must have left her worse off," but it "need not have left her significantly so." *Muldrow*, 601 U.S. at 359. Here, Huye asserts the adverse employment actions was subjected to include: "harassing Plaintiff about her disability, discouraging her from using her accommodation, subjecting her to different terms and conditions of employment as compared to non-disabled employees who worked at home, and constructive discharge." (Complaint, ¶58). None meets even that low threshold under *Muldrow*. Project Harmony addresses each, in turn.

First, Huye has not plausibly alleged any actionable harassing conduct based on her disability. To the extent Huye pleads harassment as an adverse action, it must be severe or

pervasive enough to alter the terms of employment. *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003). Courts "repeatedly emphasiz[e] that anti-discrimination laws do not create a general civility code," and that "[c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." *Id.* at 721. To determine whether harassment affected a term, condition, or privilege of employment, courts consider "the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Plaintiff's] job performance." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015) (cleaned up). Huye generally alleges that she felt some of the interactive process discussions, where she was asked questions about her restrictions and need for accommodations, were "harassing." Huye also claims her supervisor harassed her when she asked Huye how she was feeling and for task lists when she worked from home. (*Id.* at ¶¶24–26, 35). This conduct does not meet the severe-or-pervasive standard as a matter of law. *See Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 726 (8th Cir. 1999) (concluding close monitoring and heightened scrutiny are not severe or pervasive).

Second, Huye alleges she was "discouraged" from using her accommodation. That is, Huye states in her Complaint that she was told not to schedule remote days in advance but that she could still work remotely as needed, based on her symptoms. (Complaint, ¶¶16-17, 21, 31). Working remotely, as needed, *was* her approved accommodation. None of her allegations show she was discouraged from using her *approved* accommodations. *See Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000) ("[T]he employer is not obligated to provide the accommodation requested or preferred by the employee."). Huye's repeated allegations confirm she simply disregarded the parameters of her *approved* accommodations and worked her preferred schedule anyway. "Discouraging" her from engaging in insubordination does not

constitute an adverse employment action.

Third, Huye alleges she was subjected to different terms and conditions when working from home. At most, Huye alleges that Rodriguez asked her what she was working on, or how she was feeling. (Complaint, ¶ 26). But oversight that is not tied to pay, duties, discipline, or advancement does not harm a term or condition of employment. *Cf. Weger v. City of Ladue*, 500 F.3d 710, 727 (8th Cir. 2007) (supervisor's increased note-taking on employees' work activities, with no alleged negative impact, was not an adverse action). The Eighth Circuit has held that added or changed assignments falling within the normal scope of a job do not affect an identifiable term or condition and are not adverse actions. *Martinez-Medina v. Rollins*, 144 F.4th 1091, 1096–97 (8th Cir. 2025). The task-list requirement is a particularly weak predicate because Huye specifically alleges that she "and other members of her team" were told they "need to send a list of their tasks for the day to their manager when working from home." (Complaint, ¶ 25). According to Huye's allegations, the policies for working from home were applied to her whole team. No allegations plausibly allege she was treated differently, or that such treatment was an adverse action under applicable law.

Finally, Huye has failed to plead constructive discharge because the conditions she describes were not objectively intolerable. To allege constructive discharge, a plaintiff must show "(1) a reasonable person in [her] situation would find the working conditions intolerable, and (2) the employer intended to force [her] to quit." *Parker v. U.S. Dep't of Agric.*, 129 F.4th 1104, 1114 (8th Cir. 2025) (quotation omitted). This issue is governed by an objective standard. *Lisdahl v. Mayo Found.*, 633 F.3d 712, 718 (8th Cir. 2011). "[T]he question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Tatom v. Ga.-Pac. Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). "[S]uch things

as loss of supervisory responsibilities, a feeling of being unfairly criticized, dissatisfaction with work assignments, and loss of pay are insufficient to constitute a constructive discharge." *Tatom*, 228 F.3d at 932 (collecting cases). Neither is being subjected to corrective measures or "verbal harassment and increased scrutiny." *Pronk v. City of Rochester*, 193 F.4th 1135, 1145 (8th Cir. 2026) (quoting *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008)).

For example, in *Watson v. McDonough*, the Eighth Circuit affirmed the rejection of a constructive-discharge claim where the employee's conditions, including supervisor monitoring, written counseling, and added work were "far from ideal, but not . . . intolerable." *Watson v. McDonough*, 996 F.3d 850, 856 (8th Cir. 2021). Such measures do not leave the employee with no "plausible alternative" other than to quit. *Pronk*, 193 F.4th at 1145.

The conditions Huye describes were not objectively intolerable. Measured against such authorities, Huye's allegations describe ordinary workplace dissatisfaction, not objectively intolerable conditions. She points to restrictions on advance remote scheduling, (Complaint, ¶21) requests that she list her daily tasks, (*Id.* ¶¶ 24-25) supervisor monitoring, (*Id.* ¶ 26) working a five-day, eight-hour schedule, (*Id.* ¶ 33) and attendance at a non-mandatory conference. (*Id.* ¶ 44). Her bare assertion that she "felt forced to resign" is a legal conclusion the Court need not accept. The alleged workplace conditions clearly do not meet the high constructive-discharge standard.

**2. Huye's Own Allegations Show That Project Harmony Engaged in the Interactive Process in Good Faith and Granted her Reasonable Accommodations.**

Huye's own allegations foreclose her failure-to-accommodate theory. The ADA requires an employer to make reasonable accommodations for a qualified employee's known limitations, 42 U.S.C. § 12112(b)(5)(A), but it does not entitle the employee to the accommodation she prefers. Huye's Complaint details the efforts Project Harmony made to engage in the interactive process

and expressly alleges that Project Harmony granted a package of accommodations—reserved quiet spaces, use of the company's wellness room and office space, frequent breaks, and remote work as needed under Policy 5.6. The Complaint confirms that Huye's true objection is to the form of the accommodation she received, rather than the absence of one.

The Eighth Circuit has consistently held that an employer is not obligated to provide the accommodation the employee requests or prefers. The accommodation need only be reasonable and enable the employee to perform the essential functions of her job. *Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000); *see Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 671–72 (8th Cir. 2019). In *Huber*, 486 F.3d at 484, the Eighth Circuit similarly held that an employer is not required to provide the employee's ideal accommodation. The employer, not the employee, chooses among reasonable options and need only provide some reasonable accommodation. *Hennenfent v. Mid Dakota Clinic, P.C.,* 164 F.3d 419, 423 (8th Cir. 1998).

There are no allegations in Huye's Complaint that she could not perform her essential job functions while in-office or with a normal 5-day workweek schedule. Nor are there any allegations that working from home as needed to accommodate symptoms, as her accommodation permitted, was actually insufficient or denied in practice. The Complaint does not allege that any of Huye's same-day requests to work from home were denied; rather, it alleges she notified her supervisor and worked from home on those days. (*See* Complaint, ¶¶23, 35, 38, 40). Moreover, Huye's Complaint describes several meetings with her supervisors, human resources, and an executive at Project Harmony regarding her disability and accommodations. Even accepting the allegations as true, there can be no doubt that Project Harmony engaged in the interactive process with Huye in good faith. *See Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 814 (8th Cir. 2015)

(explaining "the record is clear that [the employer] made a good faith effort" to find a reasonable accommodation, evidenced by multiple meetings with human resources and supervisors over months).

*Mobley v. St. Luke's Health System* is instructive. There, the Eighth Circuit affirmed summary judgment on a failure-to-accommodate claim where the employer declined to "approve a blanket request to work from home during flare-ups" but permitted the employee to work from home "on a case-by-case basis." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 457 (8th Cir. 2022). The court held that the employer engaged in the interactive process in good faith based on the totality of its response, pointing to the "several steps that St. Luke's took in response to Mobley's request for accommodation." *Id.* at 457. Because "[a]ll the interactive process requires is that employers make a good faith effort to seek accommodations," *id.* (quoting *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 954 (8th Cir. 1999)), and the employer did so, the employer was granted summary judgment on the failure-to-accommodate claim. *Mobley*, 53 F.4th at 457–58. Similarly, Huye's own allegations show Project Harmony engaged in the interactive process in good faith, and the Court need not decide whether Huye's preferred schedule was itself reasonable. The failure-to-accommodate theory of Counts I and II should be dismissed.

### C. Counts III and IV Fail Because Huye Pleads No Materially Adverse Action and No But-For Causation.

Counts III and IV allege that Project Harmony retaliated against Huye after she requested an accommodation, complained about discrimination and retaliation, and announced she would file an NEOC charge. (Complaint, ¶78). "To prove a retaliation claim, a plaintiff must show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006). There are no allegations

to support a finding of adverse employment action, and the Complaint pleads no but-for causal connection between her protected activity and any challenged action.

As set forth above, *supra* II.B, a task-list requirement, increased supervisor monitoring, and attendance at one conference are not materially adverse actions sufficient to support a retaliation claim. Nor was Huye constructively discharged. The anti-retaliation provisions reach only materially adverse actions — those that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The Supreme Court adopted the "material" qualifier to "separate significant from trivial harms," and held that "normally petty slights, minor annoyances, and simple lack of good manners" are not actionable. *Id.* The standard is an objective one. *Burlington*, 548 U.S. at 67-69; *Trambly v. Bd. of Regents of Univ. of Neb.*, 145 F.4th 922, 927–28 (8th Cir. 2025). The conduct Huye identifies is trivial. She points to being asked to list her daily tasks while working remotely (Complaint, ¶¶ 24-25) and to being required to attend one non-mandatory conference. (*Id.* at ¶ 44). The Eighth Circuit has held that comparable workplace oversight and supervisory comments are not materially adverse. *See Weger*, 500 F.3d at 727; *cf. Trambly*, 145 F.4th at 927–28.

The retaliation counts independently fail for want of but-for causation. In the Title VII context, retaliation claims "must be proved according to traditional principles of but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The Eighth Circuit applies that but-for standard to ADA retaliation. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016). The Complaint offers only the

conclusory assertion of a "causal connection." (Complaint, ¶ 79). Her conclusory recital does not suffice.

This Court recently dismissed a retaliation claim on the pleadings where the complaint alleged only that adverse actions occurred "after" the protected activity, holding that the absence of any allegation of temporal proximity beyond that sequence, with no other allegations supporting causation, "defeats any plausible inference of a causal connection." *Peters v. City of Omaha*, 793 F. Supp. 3d 1043, 1066 (D. Neb. 2025). A count that merely recites the elements "cannot survive a [Rule 12(b)(6)] motion to dismiss." *Id*. at 1065 (citation omitted). The Eighth Circuit agrees that "temporal proximity alone does not support an inference of retaliation" when nothing more about causation is alleged. *Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 627–28 (8th Cir. 2025). The pleaded timeline shows no causal link. Most of the conduct Huye challenges began well before she announced in April 2025 that she would file a NEOC Charge. The task-list requirement began in June 2024, and she alleges increased supervisor monitoring around January 2025 (Complaint, ¶¶24–26). The only challenged act that post-dates the Charge notice is the April 22, 2025 conference, which is not materially adverse. The retaliation counts should be dismissed.

**D. The Complaint Pleads No Facts Supporting Punitive Damages.**

Huye's demand for punitive damages should be dismissed. Punitive damages under the ADA are available only where the employer acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Those terms "pertain to the employer's knowledge that it may be acting in violation of federal law," *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999), and the Eighth Circuit describes the plaintiff's burden as "formidable." *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 903 (8th Cir.

2006). The statute also bars punitive damages in a reasonable-accommodation case where the employer made good-faith efforts to accommodate. 42 U.S.C. § 1981a(a)(3).

Here, the Complaint pleads only the conclusory assertion that the employer's practices "were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law[.]" (Complaint, ¶ 74). A threadbare recital of malice does not survive a motion to dismiss. *Shukh v. Seagate Tech., LLC*, 873 F. Supp. 2d 1087, 1092–93 (D. Minn. 2012) (Title VII). More fundamentally, the conduct the Complaint describes is a good-faith dispute over the scope of accommodations, following a lengthy interactive process and a grant of accommodations. On the facts alleged, which plead only a good-faith accommodation dispute, there is no basis for the heightened showing punitive damages require. The Court should dismiss or, at a minimum, strike Huye's punitive-damages demand.

## III. CONCLUSION

Huye's own allegations describe an employer that met with her repeatedly, granted multiple accommodations in writing, and applied ordinary supervisory practices to her and her team. Huye does not plausibly show an adverse action, a failure to accommodate, retaliation, constructive discharge, or malice. Project Harmony respectfully requests the Court grant its Motion to Dismiss and dismiss Plaintiff Cassandra Huye's Complaint (Filing No. 1-1) in its entirety.

DATED THIS 25th day of November, 2026.

PROJECT HARMONY (HAVEN FOR ABUSE RESPONSE MEMBERS SERVING OUR NEBRASKA YOUTH), Defendant

By: *<u>/s/Aaron A. Clark</u>*

Aaron A. Clark (#20045)
Cody E. Brookhouser-Sisney (#25872)
Kristin Probst Nalbach (#27125)
McGrath, North, Mullin & Kratz, PC LLO
3700 First National Tower
1601 Dodge Street
Omaha, NE 68102
(402) 341-3070
aclark@mcgrathnorth.com
cbookhousersisney@mcgrathnorth.com
knalbach@mcgrathnorth.com

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1, the undersigned certifies that this brief contains 4,763 words, according to the word-count function of Microsoft Word – Microsoft Office 365. The undersigned further certifies that the word-count function was applied to all text, including the caption, headings, footnotes, and quotations.

*/s/Aaron A. Clark*
Aaron A. Clark

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 25th day of November 2026, the above and foregoing **Defendant's Brief in Support of Motion to Dismiss** was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Jennifer Turco Meyer #23760
Turco Meyer Law, LLC
4309 S. 174th Avenue
Omaha, NE 68135
jennifer@turcomeyer.law

*/s/ Aaron A. Clark*
Aaron A. Clark